Corey M. ZERBY, Petitioner

v.

Robert SHANON and Pennsylvania
Board of Probation and Parole,
Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2008.
Decided Feb. 3, 2009.

Kent D. Watkins, Saint Clair, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court is the Application for Leave to Withdraw as Counsel (Withdrawal Application) filed by Kent D. Watkins, Esq. (Counsel). This Court appointed Counsel to represent Corey M. Zerby (Zerby), an inmate currently residing at SCI–Frackville. Zerby filed a Petition for Review with this Court, challenging the Pennsylvania Board of Probation and Parole's (Board) recalculation of Zerby's maximum incarceration date. Counsel seeks permission to withdraw from representation of Zerby on the grounds that Zerby's Petition for Review is frivolous.

On January 13, 2006, Zerby pleaded guilty to one count of possession with intent to deliver and was sentenced by the Court of Common Pleas of Dauphin County (trial court) to serve one to two years in prison, with a maximum incarceration date of August 4, 2007. Zerby was paroled on September 11, 2006. While on parole, on January 4, 2007, Zerby was arrested on charges relating to possession with intent to deliver and driving with a suspended license. Zerby posted bail on January 11, 2007, and was transferred to SCI–Camp Hill on January 18, 2007. By order of the trial court, dated February 27, 2007, Zerby's bail was forfeited and the trial court issued a warrant for his arrest. Zerby was returned to Cumberland County Prison on March 6, 2007. On April 24, 2007, the Board issued a decision recommitting Zerby as a technical parole violator. After a jury trial, Zerby was convicted of possession of a controlled substance, for which he was sentenced to three to twelve months' imprisonment; possession of drug paraphernalia, for which he was sentenced to twelve months' probation; and driving with a suspended license, for which he was sentenced to 60 days of imprisonment, with his sentences to run consecutively.

On July 25, 2007, after a hearing, the Board issued a decision recommitting Zerby as a convicted parole violator and requiring Zerby to serve six months of backtime. The Board's Order to Recommit, dated September 10, 2007, indicated that Zerby received 54 days of backtime credit, from January 11, 2007 to March 6, 2007, that he owed 273 more days of backtime, that he was in the Board's custody to begin serving backtime on July 24, 2007, and that his new maximum date was April 22, 2008. Zerby wrote a letter to the Board, dated September 24, 2007, in which he disputed the April 22, 2008 maximum date and requested an explanation of the Board's calculations. By letter dated December 3, 2007, the Board explained to Zerby that it construed his letter as a petition for administrative review. The Board affirmed its calculation of Zerby's maximum date, explaining that he lost his backtime when he was recommitted as a convicted parole violator.

Subsequently, on April 22, 2008, the trial court issued an order directing that Zerby be paroled from his County sentence. On April 22, 2008, the Board issued a decision recalculating Zerby's maximum date as January 20, 2009, and stating that Zerby was in the Board's custody to serve his backtime as of April 22, 2008. Zerby again sent a letter to the Board, dated April 28, 2008, questioning the Board's calculations and indicating that he believed he should have been credited with serving his backtime between July 26, 2007 and April 22, 2008. By letter dated May 20, 2008, the Board explained that it was con-

struing Zerby's latest letter as a petition for administrative review of its April 22, 2008 decision. The letter explained that the Board's prior calculation of Zerby's maximum date had been based on the assumption that, because Zerby was returned to SCI–Frackville on July 27, 2008, he was available to serve his backtime. The letter went on to explain that, because the trial court issued an order paroling Zerby on his Cumberland County sentence, his time in prison up until that parole must have been in service of his county sentence. (Letter from the Board to Zerby (May 20, 2008) at 1–2, R. at 76–77.)[1] Zerby then filed a Petition for Review with this Court. Zerby also requested, and was granted, *in forma pauperis* status. This Court appointed Counsel to represent Zerby and Counsel now petitions for leave to withdraw from representation of Zerby.

At this point it is useful to examine exactly what is required of court-appointed counsel who seek to withdraw from representation of their appointed clients. The United States Supreme Court first addressed this issue with respect to criminal defendants in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Pennsylvania Supreme Court applied *Anders* in *Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981), and stated that, in order to withdraw from representation of a criminal defendant in a direct appeal, court-appointed counsel must: (1) notify the court and the defendant of his belief that the appeal is wholly frivolous and of his intent to withdraw; (2) provide a brief to the court and the defendant which includes any matter in the record that could arguably support the defendant's appeal; and (3) advise the defendant of "his right to retain new counsel" or proceed pro se. *Id.* at 470–74, 434 A.2d at 1186–88. This Court first applied *McClendon* in a parole revocation context in *Scott v. Jacobs*, 76 Pa.Cmwlth. 100, 463 A.2d 110 (1983), but did so with little explanation. In *Craig v. Pennsylvania Board of Probation and Parole*, 93 Pa.Cmwlth. 586, 502 A.2d 758 (1985), this Court explained the rationale for applying the requirements of *Anders* and *McClendon* to counsel seeking to withdraw from representation of petitioners seeking review of parole revocation ap-

1. Specifically, the letter stated, in pertinent part:

> Your parole violation maximum sentence date changed from April 22, 2008 (per the Board's 9/10/07 order) to January 20, 2009 (per the Board's 4/22/08 order) for the following reason. As a matter of law, a convicted parole violator is required to serve their new sentence and the back time on their original sentence consecutively. *See* 61 P.S. § 331.21a(a); *see also Com. v. Dorian*, 503 Pa. 116, 468 A.2d 1091 (1983). You were paroled from a state correctional institution and your new sentence (Cumberland County–0140–2207) was ordered to be served in the county jail; however, after you were sentenced on the Cumberland County charges on July 24, 2007, you were not transported to the Cumberland County prison, but instead to SCI–Frackville (which was a mistake and not something the Board had any control over) to serve your Cumberland County sentence. The Board considered your release on July 27, 2007 to SCI–Frackville as a return to its jurisdiction to begin serving your back time for your original sentence. However, on April 22, 2008, the Board received an order from the [trial court] indicating that you were paroled from the Cumberland County sentence effective that same day. Therefore, pursuant to 61 P.S. § 331.21a(a), you could not be serving both your back time and your new sentence consecutively, so your effective date of return to serve your back time on your original sentence was changed from July 24, 2007 to April 22, 2008, resulting in the above-computed changes to your parole violation maximum sentence date.

(Letter from the Board to Zerby (May 20, 2008) at 1–2, R. at 76–77.)

peals. The Court explained that it wanted to balance the interest of indigent petitioners in receiving effective assistance of counsel against the duty of attorneys not to press frivolous cases as is recognized in case law and the Pennsylvania Code of Ethical Responsibility. *Craig,* 502 A.2d at 760–61.

■■■ In *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the United States Supreme Court held that the stringent requirements of *Anders* did not apply to appointed counsel seeking to withdraw from representation of clients attempting to collaterally attack their convictions through Pennsylvania's Post–Conviction Hearing Act (PCHA).[2] The Supreme Court stated that the rationale of *Anders* rested on the Court's decision in *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), in which it held that "denial of counsel to indigents on first appeal as of right amounted to unconstitutional discrimination against the poor." *Finley,* 481 U.S. at 554, 107 S.Ct. 1990. The Court noted that there is no constitutional right to counsel in discretionary appeals from convictions or collateral attacks upon convictions. *Id.* at 555, 107 S.Ct. 1990. The Supreme Court concluded that merely because the Commonwealth had chosen to provide assistance of counsel to individuals attacking their convictions through the PCHA, the United States Constitution did not dictate "the exact form such assistance must assume." *Id.* at 559, 107 S.Ct. 1990. In *Commonwealth v. Turner,* 518 Pa. 491, 544 A.2d 927 (1988), the Pennsylvania Supreme Court, applying *Finley,* adopted a less stringent standard for the withdrawal of appointed counsel from cases in which the right to counsel does not derive from the United States Constitution, such as cases brought under the PCHA. The Court held

that, rather than an *Anders* brief, counsel may instead provide a "no-merit" letter which details "the nature and extent of [the attorney's] review and list[s] each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless," at which point the court must conduct its own review of whether the claim is meritless. *Turner,* 518 Pa. at 494–95, 544 A.2d at 928. While the *Turner* standard is very similar to the *Anders* standard, it is important to note that they are different standards, as the Superior Court described in detail in *Commonwealth v. Wrecks,* 931 A.2d 717 (Pa.Super.2007):

> *Direct Appeal Counsel's Request to Withdraw.* Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof. A proper *Anders* brief does not explain why the issues are frivolous and does not develop arguments against the appellant's interests. Rather, the brief articulates the issues in neutral form, cites relevant legal authorities, references appropriate portions in the record to aid our review, and concludes that, after a thorough review of the record, the appeal is wholly frivolous.
>
> *Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

---

**2.** Now the Post–Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46.

If counsel does not fulfill the aforesaid technical requirements of *Anders,* this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g., directing counsel either to comply with *Anders* or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy *Anders,* we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

*PCRA Counsel's Request to Withdraw.* Counsel petitioning to withdraw from PCRA representation must proceed not under *Anders* but under *Commonwealth v. Turner,* 518 Pa. 491, 544 A.2d 927 (1998), and *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988). Similar to the *Anders* situation, *Turner/Finley* counsel must review the case zealously. *Turner/Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

If counsel fails to satisfy the foregoing technical prerequisites of *Turner/Finley,* the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper *Turner/Finley* request or an advocate's brief.

However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of *Turner/Finley,* the court-trial court or this Court-must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief. By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

*Wrecks,* 931 A.2d at 720–21 (citations omitted). It is worth noting that frivolousness is a slightly higher standard than lack of merit; an argument may be meritless, but not frivolous. *Smith v. Commonwealth,* 524 Pa. 500, 507, 574 A.2d 558, 562 (1990). As the Superior Court noted in *Wrecks,* "*Anders* counsel is not permitted to withdraw unless the appeal is wholly frivolous, but *Turner/Finley* counsel is permitted to do so if the case lacks merit, even if it is not so anemic as to be deemed wholly frivolous." *Wrecks,* 931 A.2d at 722.

■ This Court first applied *Turner* to parole revocation appeals in *Epps v. Pennsylvania Board of Probation and Parole,* 129 Pa.Cmwlth. 240, 565 A.2d 214 (1989). Under *Epps,* counsel seeking to withdraw could file either an *Anders* brief or a *Turner* letter. *Epps,* 565 A.2d at 216. Unlike *Turner,* which only required an explanation of why a petitioner's arguments are meritless, *Epps* contained a statement that a no-merit letter should explain how the petitioner's appeal is "frivolous." *Epps,* 565 A.2d at 216. Later, however, in *Frankhouser v. Pennsylvania Board of Probation and Parole,* 143 Pa.Cmwlth. 80, 598 A.2d 607 (1991), this Court clarified

that a no-merit letter need "*only* to allege that the parolee's appeal is without merit" in accord with the requirements of *Turner. Id.* at 608 (emphasis added). In recent years, this Court has shown little concern for whether it receives an *Anders* brief or a *Turner* letter in a parole revocation matter. *See, e.g., Reavis v. Pennsylvania Board of Probation and Parole,* 909 A.2d 28, 33 (Pa.Cmwlth.2006) (stating that counsel seeking to withdraw may proceed under *Craig* or *Turner* ). However, all that is strictly required by the Supreme Court's decision in *Turner* and this Court's decision in *Frankhouser* is that counsel show that a petitioner's case lacks merit. While neither *Epps* nor *Frankhouser* explained why the lower standard of *Turner* should be applied to parole revocation appeals, it is essential to note that the United States Supreme Court has "held that a parolee is not entitled to 'the full panoply' of due process rights to which a criminal defendant is entitled, and that the right to counsel generally does not attach to such proceedings." *Pennsylvania Board of Probation and Parole v. Scott,* 524 U.S. 357, 365 n. 5, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (citation omitted).[3]

To summarize, per *Turner, Epps,* and *Frankhouser,* counsel seeking to withdraw from representation of a petitioner seeking review of a determination of the Board must provide a "no-merit" letter which details "the nature and extent of [the attorney's] review and list[s] each issue the petitioner wished to have raised,

with counsel's explanation of why those issues are meritless." *Turner,* 518 Pa. at 494–95, 544 A.2d at 928. Here, Counsel's no-merit letter states the extent of his review, providing a summary of the record in this matter. The letter also states that Counsel examined the certified record and reviewed applicable case law. With regard to the issues Zerby wishes to have raised, Counsel states:

> The issue/issues in Mr. Zerby's appeal from the revocation of his parole are that the Pennsylvania Board of Probation and Parole failed to give the petitioner credit for all time served strictly pursuant to the Board's warrant; the Pennsylvania Board of Probation and Parole erred by failing to give the petitioner credit for the time he served in a state correctional institution against his state sentence and incorrectly credited to his county sentence; and the Pennsylvania Board of Probation and Parole erred by changing the petitioner's effective date of return from July 24, 2007, to April 22, 2008, resulting in an inaccurate calculation of his maximum sentence.

(No–Merit Letter at 1.) While these may be Zerby's best arguments, and while Zerby does raise the issue of whether his maximum date was properly calculated, he also frames the issue as one of whether the Board's determination impermissibly altered his plea agreement on his original charges:

---

**3.** Interestingly, even after *Turner* and *Epps,* the Pennsylvania Supreme Court still discussed *Anders* as if it applied to the withdrawal of counsel from parole revocation cases in *Smith v. Pennsylvania Board of Probation and Parole,* 524 Pa. 500, 574 A.2d 558 (1990), and *Thornton v. Pennsylvania Board of Probation and Parole,* 525 Pa. 180, 578 A.2d 1289 (1990). However, *Smith* did not deal directly with the question of the procedures appointed counsel must use to withdraw, but with the

question of whether this Court could assess "attorney's fees and costs against appointed counsel for prosecuting what [this Court] determined to be a frivolous appeal." *Smith,* 524 Pa. at 502, 574 A.2d at 559. *Thornton* dealt with the argument that appointed counsel should be allowed to determine whether an appeal was frivolous because that counsel could be sanctioned for championing a frivolous appeal. *Thornton,* 525 Pa. at 182, 578 A.2d at 1290.

The due process clause of the 14th. amend. requires that a plea of guilty be made knowingly and voluntarily since it involves a waiver of constitutional rights on the part of the person making the plan.

. . . .

In the instant case, petitioner was advised, that by pleading guilty, he would be serving (1) one year, and after serving such be paroled with [sic] maximum of August 4, 2007.

Respondents have now altered the sentence imposed by the judge, and reached with the commonwealth.

At no time was petitioner advised in open court that if he plea [sic] guilty and receive parole, and receive new criminal charges, the Respondents would be able to alter that plea agreement.

(Petition for Review at 2–3.) Although this issue may prove not to be meritorious, it is still incumbent upon Counsel to include it in the No–Merit Letter and explain why it is meritless.

■ Finally, Counsel's No–Merit Letter does not sufficiently explain why the issues raised in it are without merit. A no-merit letter must include "substantial reasons for concluding that" a petitioner's arguments are meritless. *Jefferson v. Pennsylvania Board of Probation and Parole*, 705 A.2d 513, 514 (Pa.Cmwlth.1998). The bulk of the No–Merit Letter at issue in this case is a chronology of Zerby's penal history, dates of parole, arrest, incarceration, sentencing, and so on. The following is the only analysis of the issues raised:

Title 61 P.S. § 331.21a provides for the order of the service of sentence for a crime committed while the petitioner was on parole. The petitioner was originally paroled from S.C.I. Frackville on September 11, 2006. (Certified Record, p. 7) This statute provides the order for the service of imprisonment. The section does not allow for the concurrent service of county and state sentences. The petitioner was given credit for the time in a state correctional institution by the county because the prisoner was paroled on April 22, 2008. (Certified Record, p. 68)

Because the petitioner received a county sentence of 365 days plus 60 days the sentence was 345 days [sic]. He received 146 days credit leaving a balance of service on the county sentence of 279 days. He was returned to a state correctional institution on July 27, 2007, and subsequently paroled on the county sentence without any further service in the county jail. There is no indication in the certified record as to how many days credit he has against the county sentence. However, he did not become available to serve the state sentence until he was paroled on the county sentence.

(No–Merit Letter at 4–5.) While this explanation does cite statutory authority for the principle that Zerby could not serve his state and county sentences at the same time, it does not provide any substantive authority supporting the Board's determination that Zerby was not available to serve his state sentence until April 22, 2008, even though the Board had already recommitted him as of July 25, 2007,[4] per

---

4. We note that there are some inconsistencies in the record regarding the precise date the Board had recommitted Zerby in its decisions prior to the one currently at issue. (*Compare* Order to Recommit, September 10, 2007, R. at 61 (stating that Zerby was in the Board's custody to begin serving backtime on July 24, 2007) *with* Letter from the Board to Zerby (May 20, 2008) at 2–3, R at 76–77 ("The Board considered your release on July 27, 2007 to SCI–Frackville as a return to its jurisdiction to begin serving your back time for your original sentence.").)

its August 10, 2007 Order. Because Counsel's No–Merit letter does not address all of Zerby's arguments, and because it does not provide a substantive explanation of why the issues it does raise are meritless, we must deny Counsel's Withdrawal Application, without prejudice, and grant Counsel thirty days from the date of this Order to either file a renewed application to withdraw, along with an amended no-merit letter, or submit a brief on the merits of Mr. Zerby's Petition for Review.

## ORDER

**NOW,** February 3, 2009, the Application for Leave to Withdraw as Counsel filed by Kent D. Watkins, Esq., is hereby DE-NIED without prejudice. Mr. Watkins is granted thirty (30) days from the date of this Order to either file a renewed application to withdraw, along with an amended no-merit letter, or submit a brief on the merits of Mr. Zerby's Petition for Review.